# EXHIBIT A

Alan Harris (SBN 146079)
David Garrett (SBN 160274)
HARRIS & RUBLE
655 North Central Avenue, 17th Floor
Glendale, California 91203
Telephone: 323.962.3777
Facsimile: 323.962.3004
HarrisA@harrisandruble.com
DGarrett@harrisandruble.com

Attorneys for Plaintiff
Breanna Glover-Griffin

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/26/2024 2:20 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Vega, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES
### CENTRAL DISTRICT – COMPLEX

| | |
|---|---|
| BREANNA GLOVER-GRIFFIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES, CO., a Texas Corporation; MOHAMAD NAJJAR, an individual; DONALD MILLER, an individual; CLIFTON BUFORD, an individual; and Does 1 to 10, inclusive,<br><br>Defendants. | Case No. 24STCV34167<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Failure to Pay Minimum Wage<br>2. Improper Wage Statements<br>3. Waiting Time Penalties<br>4. Failure to Pay Business Expenses<br>5. Improper Deductions from Wages<br>6. Unfair Competition<br>7. Failure to Provide Records<br>8. Retaliation, Gov. Code §12940(h)<br>9. Hostile Work Environment<br>10. Failure to Prevent Discrimination<br>11. Breach of Contract<br>12. Wrongful Termination<br>13. Negligent Hiring, Training & Retention<br>14. Employment Discrimination<br><br>Demand for Jury Trial |

1

Plaintiff Breanna Glover-Griffin (hereinafter, "Glover-Griffin" or "Plaintiff"), as an individual and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges as follows:

## INTRODUCTION

1.      This is a class action seeking unpaid wages, damages, liquidated damages, continuing wages, reimbursement for required expenses, restitution, penalties, premium wages and attorneys' fees and costs.  This Complaint asserts claims for violations of California Labor Code sections 201, 203, 204, 226, 510, and 1198, among other statutes; violations of the relevant Wage Order of the Industrial Welfare Commission ("IWC"); violations of section 17200 *et seq.* of the California Business and Professions Code ("UCL"); violations of the California Fair Employment and Housing Act ("FEHA"), Gov. Code §12940 *et seq.*; breach of contract and employment discrimination on the basis of race, color, gender and sexual orientation; and otherwise as hereinafter alleged.

2.      Plaintiff Glover-Griffin was employed as a non-exempt, non-union flight attendant for Defendant SOUTHWEST AIRLINES, CO. ("Defendant" or "SWA").  Plaintiff is bringing this suit to recover damages and penalties against SWA due to their illegal employment practices during the period of four years prior to the filing of this Complaint (plus any applicable tolling period) and ending on such date as may be determined by the Court (the "Class Period").  Plaintiff is bringing this suit on behalf of a class of all others similarly situated pursuant to Code of Civil Procedure section 382.  Plaintiff seeks to represent a Class which is defined as: **all non-exempt, non-union SWA employees whose base of work was California during the period four years prior to the filing of this Complaint (plus any applicable tolling period) and ending on such date as may be determined by the Court (the "Class Members").**

4.      SWA is a Texas corporation that owns and operates Southwest Airlines.[1]

5.      SWA is a major airline in the United States that operates on a low-cost carrier model. It is headquartered in Love Field, Dallas, in the Dallas–Fort Worth metroplex, and has scheduled service to 121 destinations in the United States and ten other countries, including Puerto Rico, Mexico, Central America, and the Caribbean. Id.

---

[1] https://www.southwest.com/ (all websites last accessed December 24, 2024).

2

6.    As of 2018, SWA carried more domestic passengers than any other United States airline.[2]

7.    As of November 2024, the SWA fleet consists of 828 aircraft, all Boeing 737 narrow-body jets, making it the fourth-largest commercial airline fleet in the world.[3]  Using a single basic aircraft type allows Southwest pilots and flight attendants to crew any aircraft in the fleet without restrictions. Id.

8.    SWA's flight model is distinct from that of other US airlines.  It uses a point-to-point network, which includes multiple intrastate routes in California.

9.    The airline has nearly 80,000 employees and operates about 4,000 daily departures during peak travel season.[4]

10.    SWA has company-wide policies and procedures that control virtually every facet of the jobs of Plaintiff and the Class Members, including the uniforms they wear, materials they use, and the jobs they perform, including when, where and how they perform them.

11.    The airline experienced severe delays and thousands of flight cancellations starting on December 21, 2022, and continuing through the Christmas holiday (the "2022 Meltdown")[5]  While many cancellations were due to bad weather from the severe late December winter storm across much of the United States, industry experts also blamed inadequate staffing and the airline's "outdated" employee scheduling system, citing reports of employees waiting on hold on the telephone for up to *eight hours* without compensation awaiting work assignments. Id.

12.    Some experts attributed the crisis to the lack of scheduling flexibility inherent in the airline's point-to-point operations model.[6]  Paul Krugman in *The New York Times* suggested the turmoil was not as much about corporate greed as some might expect and noted that despite an increasingly digitalized world, "there's a lot of physical action, and real-world labor, going on behind the scenes."[7]

---

[2] https://www.bts.gov/newsroom/2018-traffic-data-us-airlines-and-foreign-airlines-us-flights

[3] https://www.southwestairlinesinvestorrelations.com/news-and-events/news-releases/2023/01-26-2023-114537893

[4] https://en.wikipedia.org/wiki/Southwest_Airlines#Fleet

[5] https://www.reuters.com/business/aerospace-defense/southwest-airlines-agrees-140-million-penalty-over-2022-holiday-meltdown-2023-12-18/

[6] https://www.dallasnews.com/business/airlines/2022/12/28/should-southwest-airlines-reconsider-its-point-to-point-route-system/

[7] https://www.nytimes.com/2022/12/29/opinion/southwest-airlines.html

3

13.    In December 2023, the airline reached a settlement with the USDOT and received a record-setting $140 million fine, the largest fine ever imposed by the agency by a factor of roughly 30, and has reported losses exceeding $1.1 billion stemming from the crisis.[8]

14.    The focus of the USDOT settlement was to provide a remedy to *passengers* for the "numerous violations of consumer protection laws [by SWA] during and after the operational failures that cancelled 16,900 flights and stranded over two million passengers" during the Meltdown.[9]

15.    However, no adequate remedy has been provided to Plaintiff and the Class Members for SWA's violations of California state labor laws during the Meltdown and Class Period, as described below.

16.    **Minimum Wage Violations**:  SWA has often required Plaintiff and Class Members to engage in unpaid, off-the-clock work, for which they were not paid the minimum wage.  For example, during times of scheduling "breakdowns," many Class Members were required to stay on hold for up to *eight hours* at a time awaiting their work schedule, without compensation.  Plaintiff and many Class Members have been required to wait at airports for up to *30 hours* at a time without pay or full reimbursement of expenses.

17.    **Training:**   Upon hiring, Plaintiff was required to undergo extensive *training* for four (4) weeks (the "Training"), without pay.  During Training, Plaintiff working up to fourteen (14) hours per day, for six (6) days per week, for which Plaintiff did not receive the required minimum wage.

18.    **Illegal Deduction Violations:**  In conjunction with the Training, Plaintiff received a "Crew Advance" of $1,200.00.  However, after completing her training, Plaintiff was required to re-pay the Crew Advance, *in full*, in violation of the Labor Code[10], as noted on her January 20, 2023, wage statement:

| Earnings | | | | |
|---|---|---|---|---|
| Description | TFP/Hrs | Rate | Amount | YTD Amount |
| Crew Advance | | | | 1,200.00 |
| Crew Advance Takeback | | | -1,200.00 | -1,200.00 |

The so-called "Crew Advance Takeback" is clearly an illegal deduction of *wages*, as the total "YTD [Year

---

[8] https://www.reuters.com/business/aerospace-defense/southwest-airlines-agrees-140-million-penalty-over-2022-holiday-meltdown-2023-12-18/

[9] https://www.transportation.gov/briefing-room/dot-penalizes-southwest-airlines-140-million-2022-holiday-meltdown

[10] Labor Code section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

4

to Date] Amount" is included in the "Earnings" section of the wage statement.

19. **Failure to Reimburse Necessary Expenses:** In violation of the Labor Code, SWA failed to reimburse Plaintiff and Class Members for the use of their cell phones during the Class Period.[11] In order to receive their work assignments, Plaintiff and Class Members are required to call into the SWA scheduling center and/or access information through SWA's online portal. While on the road, Plaintiff and Class Members were/are required to utilize their phones in order to confirm their assignments.

20. In further violation of Labor Code section 2802, SWA failed to reimburse Plaintiff for her uniform, instead, requiring Plaintiff to pay for the uniform herself through payroll deductions, as indicated on her January 20, 2023, wage statement:

| Deductions | | |
|---|---|---|
| Description | Amount | YTD |
| Pre Tax Medical - BSC | 36.50 | 73.00 |
| Pre Tax Dental - BSC | 6.50 | 13.00 |
| Pre Tax Vision - BSC | 2.87 | 5.74 |
| Uniform Deduction | 25.00 | 50.00 |
| Deductions | 70.87 | 141.74 |

21. **Unfair Competition:** SWA engages in an improper scheme, in which it hires residents of California, whose de facto base of work is in California, and pretends to "base" them in nearby states, such as Nevada or Arizona (the "Basing System"). If a California resident's "Assigned Base" is Nevada or Arizona, SWA treats the California resident as if they actually live in Nevada or Arizona, rather than California, for payroll purposes. Accordingly, the Basing System deprives California citizens of their rights under California employment law, and it also deprives the State of California of tax revenue, including the payment of mandatory California payroll taxes.[12]

---

[11] Code Section 2802 requires employers to indemnify employees for necessary expenditures of losses made in direct consequence of the employee's duties, or obedience to the employer's directions. Code § 2802 (a). The California Court of Appeal has held that an employer must always reimburse an employee for the mandatory use of the employee's personal cell phone use for work related calls. Cochran v. Schwan's Home Serv., Inc., 228 Cal. App. 4th 1137, 1144 (2014). See Gallano v. Burlington Coat Factory of Cal., LLC, 67 Cal. App. 5th 953, 960 (2021) (explaining that California has a strong public policy that favors indemnifying employees against employers for such expenses or losses).

[12] Employers are required to withhold mandatory employee payroll deductions to pay into state payroll taxes for State Disability Insurance (SDI) and Personal Income Tax (PIT). Employers contribute to Unemployment Insurance (UI) and Employment Training Tax (ETT). https://edd.ca.gov/payroll_taxes/

5

22.    Plaintiff is informed and believes and thereon alleges that the Basing System is, in actuality, an artifice which allows SWA to avoid paying employer-side payroll taxes to California resident employees who are "faux-based" in other states.  Specifically, for Class Members who live in California but have an "Assigned Base" in Nevada or Arizona, SWA will deduct California *state tax* from that Class Member's payroll check, but will *not* pay required California SDI, UI and ETT.[13]  Thus, the burden of paying California taxes falls 100% upon the employee, as shown by Plaintiff's wage statement.

23.    Plaintiff's January 20, 2023, wage statement show that SWA deducted the required individual California state taxes **from Plaintiff's earnings**, but failed to pay California employer-side taxes[14]:

| Employee Taxes | | |
|---|---|---|
| Description | Amount | YTD |
| OASDI | 153.55 | 227.90 |
| Medicare | 35.91 | 53.30 |
| Federal Withholding | 222.37 | 287.85 |
| State Tax - CA | 89.57 | 106.55 |
| | | |
| Employee Taxes | 501.40 | 675.60 |

24.    Plaintiff's actual base of work was Los Angeles, per Ward v. United Airlines, Inc., 9 Cal. 5th 732, (2020) and Oman v. Delta Air Lines, Inc., 9 Cal. 5th 762 (2020).[15]  More than 98% of Plaintiff's flights originated at Los Angeles International Airport [LAX], thus it was the primary airport from which she operated.  During her entire employment, Plaintiff had only one flight that originated in Las Vegas.

---

[13] In this way, SWA can avoid paying millions of dollars in California employer-side taxes by pretending that California resident employees live and work in another state.

[14] The empty white space is where California SDI, UI and ETT should be located.

[15] The California Supreme Court has ruled that an employee is "based" in California if "California serves as the physical location where the worker presents himself or herself to begin work."  Ward, 9 Cal. 5th at 738.  The California Supreme Court held that, for airline employees, the "home base" or "base of work" is essentially the **primary airport or location from which they operate**, and this determines the jurisdiction of specific state labor laws.  Oman, 9 Cal. 5th at 768.  The Legislature intended to extend the protections of § 226—within reason—to workers who perform at least some of their work in California, even if they do not perform all or most of their work in California. Ward, 9 Cal. 5th at 737.

6

25.     SWA states that the Basing System is organized by operational needs and seniority.[16] However, it appears that the Basing System itself is an antiquated construct which has been superseded SWA's own internal policy changes.  Unlike most other airlines, SWA has no "minimum trip requirements" for its flight attendants.   After their first month of employment, SWA flight attendants are not required to fly out of their Assigned Base, or even go there at all.  Instead, SWA flight attendants are able to create their own base of work by trading assignment with other flight attendants.

26.     Therefore, SWA flight attendants who live in California, and are "faux-based" in another state, are free to "trade" flights so that they present themselves to work in California.  In this way, a flight attendant who lives in California, but is allegedly "faux-based" in another state, could originate every flight in California, their de facto "base of work."

27.     Plaintiff utilized this system of trading assignments in order to originate 98% of her flights at LAX, near her home.  However, knowing this, SWA still refused to treat Plaintiff as a California resident for purposes of payment of employer-side taxes and provision of her payroll records when requested.

28.      SWA's faux-basing scheme is a violation of California's Unfair Competition law as well as the California Labor Code.  An out-of-state company cannot avoid paying California taxes by pretending to be based in another state if it hires California residents to begin work in California. California law mandates that any employer doing business in the state, deriving income from sources within the state, or making payments to employees for services performed within the state, is subject to California's tax laws.  Cal. Unemp. Ins. Code § 13005 ("Employer").

29.     Furthermore, California law requires that employees who reside and work in California cannot be deprived of the substantive protection of California law, and any contract provision attempting to do so is voidable by the employee.  Cal. Labor Code § 925 ("Unlawful practices by employer".)

30.     California law will govern employment disputes and tax obligations for employees who are residents of California or work in California, regardless of the employer's claimed base of operations.

31.     **Discrimination and Wrongful Termination:**  On the "Diversity, Equity, & Inclusion

---

[16] https://careers.southwestair.com/flight-attendants

(DEI)"[17] page its consumer website, SWA claims:

> Southwest Airlines® recognizes, respects, and values differences. By fostering a Culture that embraces and utilizes unique skills, talents, and backgrounds, we create competitive advantages in Teamwork and innovation that contribute to our overall success.

> The Vision of DEI at Southwest® is to cultivate a Culture of Belonging where all our People can thrive. Our focus is to fuel ongoing momentum to operationalize DEI in our processes and practices to achieve systemic and sustainable change.

> **Every. Single. One. Of. Us.**

> At Southwest Airlines, our Heart represents our identity. It's more than the symbol of our brand. It's who we are. We're a Company of People. People representing diversity of culture, background, experiences, and viewpoints. Each of our Employees bring their own talents, creativity, and individuality. And together, we make Southwest the incredible Company it is. Our People are the Heart of Southwest Airlines.

> Inclusion has always been at the Heart of Southwest. Our Company was founded on the principle of putting People first, and we've never wavered from that commitment. That means all People. We're committed to being a place where Employees feel welcomed and encouraged to bring their whole selves to work without fear of hate, racism, discrimination, harassment, intolerance, disrespect, or injustice. We understand that in order for every Employee at Southwest to thrive, we must foster an environment of impartiality, fairness, representation, and balance. . .

> We each succeed when we bring our best selves to work. We succeed when we embrace civility and treat each other with respect and Hospitality. Southwest succeeds when we stay agile and focused on being excellent in all we do. It takes every single one of us.[18]

32.    Despite the virtue-signaling proclamation on its website, SWA employees of certain races, gender and sexual orientation do not "feel welcomed and encouraged to bring their whole selves to work without fear of hate, racism, discrimination, harassment, intolerance, disrespect, or injustice." SWA does not, in fact, "foster an environment of impartiality, fairness, representation, and balance." On the contrary, SWA subjects African American employees like Plaintiff to illegal discrimination and hostile work environment, in order to serve other DEI interests.

33.    Plaintiff is an African American, heterosexual woman who worked as a flight attendant

---

[17] Following a federal lawsuit, "Southwest Airlines Co. has acknowledged and agreed to abandon its unlawful discriminatory employment practices outlined in AFL's federal civil rights complaint." https://aflegal.org/victory-southwest-airlines-agrees-to-abandon-illegal-dei-practices-following-federal-civil-rights-complaint-filed-by-america-first-legal/. Unfortunately, this practice changes arrived too late to benefit Plaintiff and the Class Members herein.
[18] https://www.southwest.com/citizenship/people/diversity-equity-inclusion/

8

for SWA beginning in late, 2022.  During the course of her employment with SWA, Plaintiff was discriminated against based upon her race, color, gender and sexual orientation.

34.    As a non-union flight attendant in her probationary employment period, Plaintiff's conduct was held to an unachievably *high standard* compared to her white counterparts.  In fact, as detailed below, the *standards* to which Plaintiff was held, compared to her white counterparts, were so strict that they bordered on the absurd.

35.    Further, Plaintiff had to endure an absurdly-high level of *scrutiny* compared to her white counterparts. Without cause, Plaintiff was subject to one or more "ghost rides", which occur when supervisor takes a flight without identifying themselves, to secretly observe the actions of a specific employee (hereinafter, the "Ghost Ride(s)").

36.    For example, Plaintiff was subjected to one unannounced Ghost Ride because Plaintiff, while "on reserve," allegedly failed to return two phone calls from SWA dispatch at 3:46 a.m. within **seven (7) seconds**, even though Plaintiff returned the call within sixty (60) seconds and showed up early for her flight.  (Being "on reserve" means that an employee must be ready to be called into work on an "as needed" basis.  Sometimes Class Members can be on reserve for up to 24 hours.)

37.    During a Ghost Ride, on March 19, 2023, Plaintiff was cited for wearing a **company-issued jacket** on a flight to Los Angeles that originated in Reno, where the ground temperature was a chilly **27 degrees**.  Plaintiff wore the jacket while the plane was on the ground in Reno because she was required to stand in the galley next to the plane's open door, while the ground crew re-supplied the plane, exposing her to 27-degree exterior temperatures.  The plane itself remained cold throughout the following short flight (possibly due to a heater issue), requiring Plaintiff to continue to wear her jacket.

36.    According to the SWA uniform policy, an employee can wear a company-issued jacket in flight, if weather conditions permit.  Despite the bitterly cold temperatures, Plaintiff, an African American woman, was cited by the supervisor for wearing her jacket on the Ghost Ride, when other white or gay male flight attendants who wore their jackets in similar circumstances were not cited.

37.    In another example of the extreme race-based scrutiny placed upon her, Plaintiff was cited for wearing a short skirt identical to one worn by white flight attendants, including biological men.

9

38.    During a disciplinary call, a supervisor who observed Plaintiff during a Ghost Ride stated that Plaintiff's skirt was allegedly "two inches above the knee" while Plaintiff was "in motion". Absurdly, the alleged "dress policy" that Plaintiff allegedly violated was rolled out AFTER Plaintiff had already embarked on a three-day trip, such that she had no opportunity to change her wardrobe.

39.    **At the same time, white employees were *not* singled out for wearing skirts shorter than the one worn by Plaintiff.**  In fact, **SWA's own website**[19] shows more than one white flight attendant wearing a short dress that falls above the knee:



40.    Further, **biological white male employees** who identified as women have been allowed by SWA to wear dresses which were much shorter than the dress worn by Plaintiff, i.e. two inches above the knee, photos of which were frequently posted on social media websites:

---

[19] https://southwest50.com/our-stories/bluer-skies-the-great-southwest-uniform-refresh/.

 

41.    A group photo of a recent graduating class of SWA flight attendants features a biological male flight attendant wearing a skirt shorter than the one for which Plaintiff was terminated:



11



42.    Plaintiff was singled out for extra scrutiny for extremely minor clothing issues that white employees (including gay males and biological males who identified as women) did not have to endure. Following a Ghost Ride, a supervisor determined that the shoes worn by Plaintiff during her training and throughout her employment were suddenly deemed unacceptable.  On the same Ghost Ride, Plaintiff was falsely accused of wearing a "cross body purse" when in fact she was wearing a regulation identification holder, which is acceptable according to the uniform policy.  Plaintiff was also cited on a Ghost Gide for having a small ear piercing at the top of her ear, even though she had the piercing from the time she was hired, trained and throughout her entire employment, and had never been notified that the piercing was against regulations.

43.    Other similarly-situated white flight attendants (including those in their probationary period) with alleged clothing violations were simply given warnings and multiple opportunities to correct the situation.  On the contrary, Plaintiff was not given the opportunity to correct her alleged clothing violations, but rather, she was abruptly terminated on or about March 22, 2023.

44.    As stated above, the entire pretext of secretly observing Plaintiff on the Ghost Rides was that she incurred an alleged "UTC" (Unable to Contact) occurrence when she "on reserve" on or about March 19, 2023.  (Being "on reserve" means that an employee must be ready to be called into work on an "as needed" basis.)

45.    On or about March 19, 2023, at about 3:47 a.m., Plaintiff was "on reserve" and having trouble sleeping, as she was frequently checking her phone so that she did not miss a call from SWA.  At

that time, she used her phone to check her employee "board" and discovered that she had received a "UTC" (Unable to Contact) "occurrence" from SWA crew scheduling ("Crew Scheduling") shortly before, at 3:46 a.m. (A UTC indicates that Plaintiff was allegedly called by Crew Scheduling to report for work, but did not respond. An "occurrence" is a negative job incident.)

46.    When Plaintiff called Crew Scheduling immediately thereafter, within a minute, a representatives Crew Scheduler alleged that they called Plaintiff twice at 3:46 a.m., **seven (7) seconds apart**, and that Plaintiff failed to answer. The Crew Scheduler claimed that the first call resulted in a "busy tone" and the second call (seven seconds later) resulted in "21 second beeping noise."

47.    However, a review of Plaintiff's call record obtained from T-Mobile—Plaintiff's cell phone service—revealed that Plaintiff did not receive any calls at all during the time alleged. Apparently, Crew Scheduling dialed the wrong number. A true and correct copy of Plaintiff's electronic phone log (redacted for privacy) showing that <u>no phone calls</u> were made to Plaintiff's phone at the time alleged is attached hereto as **Exhibit 3** (with Incident Report). Despite there being no actual record of Plaintiff receiving the phone calls alleged, Plaintiff was hit with a negative UTC "occurrence" on her record.

48.    Further, despite the late notice, Plaintiff still arrived at the airport *early*, ready for her flight at 4:13 a.m., two minutes before the original check-in time of 4:15 a.m.

49.    Plaintiff presented evidence to SWA that (1) she did not receive the alleged phone calls; and (2) that she arrived at her post early, two minutes prior to the original check-in time. Nonetheless, SWA refused to remove the negative occurrences from her records. Further, they subjected her to one or more Ghost Rides in retaliation for her resisting the false UTC incident.

50.    Other similarly-situated Caucasian male flight attendants in their probationary employment period like Plaintiff, were not terminated following similar UTC "occurrences", but instead were given warnings and multiple opportunities to comply.

51.    During the course of her employment with Defendant, Plaintiff—because of her race, color, gender/sex and sexual orientation—was continuously discriminated against, harassed, and subjected to a hostile work environment by the actions, conduct, and comments of Defendant, their employees and its managers.

13

52.    **Plaintiff was subjected to a hostile work environment in which employees were constantly categorized, compartmentalized, scrutinized and judged according their race and sexual orientation.**  During the Class Period, SWA management apparently became obsessed with asking intrusive, non-job related questions regarding the private lives of Plaintiff and the Class Members.  Class Members were forced to undergo intrusive, unwanted surveys regarding their race, age, disability, gender, and sexual preferences, which culminated in the publishing of public charts such as these:





CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

53.    In the DEI excerpt above, Management indicated that their "goal[]" was to implement "Company-wife Self-ID campaign to capture **additional dimensions of diversity**."[20]  Thus, they wanted to ask Plaintiff and the Class Members even more intrusive, non-job related questions, to be published in 35-page "DEI Reports".  It appears that dividing up employees by their "identity" became more important to SWA management than evaluating individuals by the job performance or the content of their character.  Under the circumstances, reasonable persons in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

54.    The harassment was sufficiently pervasive so as to alter the conditions of employment, and it created an abusive and hostile working environment.  Plaintiff considered the work environment to be hostile and abusive.  **Defendants used Plaintiff's hiring to pad their DEI statistics, and then abruptly discarded Plaintiff utilizing demonstrably-false allegations of wrongdoing.**

55.    The actions of Defendant, their employees, and their managers constituted unlawful discrimination in employment, based on harassment, in contravention of the law, which forbid discrimination in the workplace and adverse employment actions on account of sexual orientation, gender/sex, race and color.  Plaintiff's supervisors were aware, approved, and even participated in, such offending conduct.

56.    Defendants knew or should have known of the harassment and discrimination and offensive conduct to take immediate and appropriate corrective action, but failed to properly investigate the harassment and discrimination, which caused and contributed to the existence of the hostile work environment as alleged herein.

57.    Further, Plaintiff alleges that Defendant had full knowledge of the hostile work environment, including by reason of the personal complaint that Plaintiff made to management, but nonetheless, Defendant failed to rectify—or even address—the behavior of the persons creating the hostile work environment.

58.    As a proximate result of the actions and failures to act by Defendant, Plaintiff suffered

---

[20] https://www.southwest.com/assets/pdfs/communications/one-reports/2023-DEI-Report_Online_Final.pdf

15

physical, emotional, and economic injury.  As a further proximate, foreseeable and direct result of the

discriminatory acts, Plaintiff continues to suffer physical harm, humiliation, embarrassment, mental and

emotional distress, and discomfort, all to Plaintiff's damages in an amount according to proof.

59.    The actions of Defendant's employee were done with malice, fraud, and/or oppression,

and in reckless disregard of Plaintiff's rights under the law.

60.    Defendant ratified the malicious, fraudulent, and/or oppressive conduct of its employees

when it failed to prevent it.

61.    Defendants engaged in conduct constituting an unlawful employment practice in violation

of the law, which conduct was malicious, fraudulent, and/or oppressive.  Thus, Plaintiff is entitled to

recover punitive damages from Defendant, in an amount according to proof.

62.    As a direct and proximate result of the conduct of Defendant in violation of state law, *inter*

*alia*, Plaintiff is entitled, to recover from Defendant and does pray for remedies allowed under the law,

including but not limited to, general, special and punitive damages, costs, interest, and attorneys' fees.

## JURISDICTION AND VENUE

63.    This is a civil action seeking unpaid wages, continuing wages, damages, and attorneys'

fees and costs, including such reasonable reimbursement of fees and costs as may be required by Section

218.5 of the California Labor Code.  This Court has jurisdiction over this action pursuant to the

California Constitution, Article VI, section 10.

64.    This Court has jurisdiction over all Defendants because, upon information and belief,

Defendants are either citizens of California, have sufficient minimum contacts in California, or otherwise

intentionally avail themselves of the California market so as to render the exercise of jurisdiction over

them by the California courts consistent with traditional notions of fair play and substantial justice.

65.    SWA has a policy, practice and history of labor law violations against its California

employees.  Class Members are often forced to work off the clock.  The wage statements often do not

contain the legally required information.  Class Members are often not paid the proper minimum wage by

SWA.  Class Members do not receive proper reimbursement for their expenses.

66.    Venue as Defendants is proper in this judicial district, pursuant to California Code of Civil

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Procedure section 395. Defendants maintain an office, transact business, have an agent or are otherwise found in the County of Los Angeles and are within the jurisdiction of this court for the purpose of service of process. The unlawful acts alleged herein had a direct effect on and were committed within the State of California.

67. This Court has jurisdiction over Defendants because, upon information and belief, each Defendant is either a resident of California, has minimum contacts in California, or otherwise intentionally avails itself of the protections of California so as to render California's exercise of jurisdiction over Defendants consistent with traditional notions of fair play and substantial justice.

68. For purposes of jurisdiction and venue, Plaintiff's "base of work" is Los Angeles, California. Approximately 98% of Plaintiff's interstate and intrastate flights originated at Los Angeles International Airport.

**PARTIES**

69. Plaintiff is an individual over the age of 18 years. At all times relevant hereto, Plaintiff lived in Los Angeles County and her base of work was Los Angeles County. Plaintiff was employed by SWA during the Class Period. Plaintiff has complied with all required administrative requirements prior to the filing of this case, as detailed below.

70. SWA is a Texas corporation and at all times relevant hereto, SWA conducted substantial and regular business in Los Angeles County, California. SWA's business is owning and operating an airline throughout California and the United States. SWA operates hundreds of flights a day at thirteen (13) California airports, including LAX, San Diego, San Francisco, Oakland, Sacramento, Burbank, Fresno, Long Beach, Ontario, Palm Springs, Santa Barbara, San Jose and Orange County.

71. Plaintiff is informed and believes that Defendant Mohammad Najjar is a resident of Los Angeles County in the State of California and that during the relevant times herein, shared operational control over SWA operations at LAX.

72. Plaintiff is informed and believes that Defendant Donald Miller is a resident of Los Angeles County in the State of California and that during the relevant times herein, shared operational control over SWA operations at LAX.

17

73.     Plaintiff is informed and believes that Defendant Donald Miller is a resident of Los Angeles County in the State of California and that during the relevant times herein, shared operational control over SWA operations at LAX.

74.     Plaintiff is informed and believes that Defendant Clifton Buford is a resident of Los Angeles County in the State of California and that during the relevant times herein, shared operational control over SWA operations at LAX.

75.     Plaintiff and informed and believes, and thereon alleges that Defendant Najjar, Miller, Buford, and each of the individual Doe Defendants is an individual who is a California resident who work(ed) at SWA.  Each was an "employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 221, 226, 510, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."  Cal. Lab. Code § 558.1.

76.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiff, who therefore sue Defendants by such fictitious names under Code of Civil Procedure § 474.

77.     Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

78.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  The Defendants named herein as DOE 1 through DOE 10 are and were persons acting on behalf of, or acting jointly with, Defendants, who violated, or caused to be violated, one or more provisions of the California Labor Code as alleged herein.

18

## ADMINISTRATIVE REQUIREMENTS AND TOLLING

79.      Plaintiff has complied with all required administrative requirements prior to the filing of this case.

80.      Plaintiff received a Right to Sue Letter ("State Right to Sue Letter") from the California Civil Rights Department ("CCRD") and filed this complaint within the required time period.[21]  A true and correct copy of the State Right to Sue Letter is attached hereto as **Exhibit 1**.

81.      Plaintiff received a Right to Sue Letter from ("Federal Right to Sue Letter") the U.S. Equal Employment Opportunity Commission ("EEOC").  A true and correct copy of the Federal Right to Sue Letter is attached hereto as **Exhibit 2**.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

82.      Plaintiff was a non-exempt employee within the meaning of the California Labor Code and the implementing rules and regulations of the IWC Wage Orders, and, in particular, Industrial Welfare Commission Wage Order 9-2001 and California Labor Code §515. Employee's primary job duties – including the tasks described in the preceding paragraphs – involved tasks that were performed pursuant to an established protocol. The job duties involved a variety of physical and clerical demands, interacting with passengers and or other staff. This type of work is non-exempt work.

83.      In order to meet the requirements of their job duties, employees typically work long hours at the direction of SWA.  Employees are often not paid the proper minimum wage.  For example, during the Class Period, SWA often paid Class Members less than the state or local minimum wage.

84.      Contrary to California law, SWA does not keep proper time records.

85.      When Plaintiff became aware of the unpaid wages and questioned representatives of SWA regarding the wages that were withheld, SWA refused to pay the outstanding wages.

86.      Plaintiff was discriminated against by SWA and its managers in violation of the Fair Employment and Housing Act ("FEHA"), Gov. Code §12940 et seq., by creating a hostile work environment, retaliating against Plaintiff and discriminating against Plaintiff, as more fully described

---

[21] The time period for filing was tolled by the filing of an Equal Employment Opportunity Commission ("EEOC") complaint.

19

below.  When Plaintiff complained about the discrimination and harassment, her complaints were

ignored, and she suffered retaliation.

87.    In performing their job duties, SWA often required employees to use uniform clothing,

safety equipment and other tools. Such employees had to purchase and maintain certain items with their

own money, and they were not reimbursed by SWA.

88.    Many times, SWA did not provide proper expense reimbursement such as equipment and

cell phone reimbursement, which was required for Class Members to receive their work schedules.

89.    Many times, Defendants failed to provide Plaintiff with itemized wage statements that

reflect all deductions from payment of wages.

90.    At all relevant times mentioned herein, section 201 of the California Labor Code provided

that "wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Lab.

Code § 201.  Similarly, section 202 of the California Labor Code provided:

> If an employee not having a written contract for a definite period quits his or her
> employment, his or her wages shall become due and payable not later than 72 hours
> thereafter, unless the employee has given 72 hours previous notice of his or her intention
> to quit, in which case the employee is entitled to his or her wages at the time of quitting.

Id. § 202(a).

91.    Defendants often did not compensate Plaintiff and the Class Members as required by

sections 201 and/or 202 of the California Labor Code. The "final" paycheck Plaintiff received did not

fully compensate Plaintiff, as Defendants failed to pay minimum wage to Plaintiff and filed to make

timely payment of her final wages.

92.    Furthermore, at all relevant times mentioned herein, section 203 of the California Labor

Code provided:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with
> Sections 201, 201.5, 202 and 202.5, any wages of an employee who is discharged or who
> quits, the wages of the employee shall continue as a penalty from the due date thereof at
> the same rate until paid or until action therefor is commenced; but the wages shall not
> continue for more than 30 days.

Id. § 203.

20

93.    Plaintiff contends that Defendants' failure to pay her and the Class Members within the time provided by sections 201 and/or 202 of the California Labor Code has been and is "willful" within the meaning of section 203 of the California Labor Code and that, accordingly, Plaintiff is entitled to the "continuing wages" provided for by section 203.

94.    Defendants also violated section 204 of the California Labor Code many times by failing to pay all wages earned to those of its workers who had not quit or been fired.

95.    At all relevant times mentioned herein, section 1198 of the Labor Code provided:

The maximum hours of work and the standard conditions of labor fixed by the [Industrial Welfare Commission] shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by [an] order or under conditions of labor prohibited by [an] order is unlawful.

Cal. Lab. Code § 1198.

96.    At all relevant times mentioned herein, Wage Order Number 9 (as periodically amended) applied to Plaintiff and the Class Members.

97.    At all relevant times herein, section 226 of the Labor Code provided:

(a)  Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

21

. . . .

(e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

. . . .

(h) An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees.

Id. § 226.

98.    Defendants employed Plaintiff and the Class Members but often failed to provide them with the data required by section 226 of the California Labor Code.

99.    At all relevant times mentioned herein, section 204(a) of the Labor Code provided:

All wages, other than those mentioned in Section 201, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Id. § 204(a).

100.    At all relevant times mentioned herein, section 1194 of the California Labor Code provided:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Id. § 1194. At all relevant times mentioned herein, section 1194.2 of the California Labor Code provided that, "[I]n any action under . . . Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

Id. § 1194.2. Section 1197.1 (a) of the California Labor Code provides:

22

Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty as follows:

(1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid.

(2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed.

Cal. Lab. Code § 1197.1.

101.    IWC Wage Order 9, provides, in part:

**2. DEFINITIONS**

(D) —"Employ" means to engage, suffer, or permit to work.

(E) —"Employee" means any person employed by an employer.

(F) —"Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

. . .

**3. HOURS AND DAYS OF WORK**

(A) Daily Overtime- General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (11/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime as follows:

(a) Employees may be employed up to a maximum of 16 hours including meal periods in any one day from the time they are required and do report until dismissed, provided the employee is compensated for such overtime at not less than:

(i) For daily employees and weekly employees, excluding weekly employees guaranteed more than 40 hours a workweek and —on call‖ employees, one and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any one workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

(ii) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday, and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

. . .

(iv) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary.

. . .

**4. MINIMUM WAGES**

(A) Every employer shall pay to each employee wages not less than nine dollars ($13.00) per hour for all hours worked, effective January 1, 2021. . . .

**7. RECORDS**

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

24

(D) Clocks shall be provided in all major work areas or within reasonable distance thereto insofar as practicable.

. . .

**20. PENALTIES**

(See Labor Code, Section 1199)

(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

(1) Initial Violation — $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

(2) Subsequent Violations — $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

(3) The affected employee shall receive payment of all wages recovered.

IWC Wage Order 9.

102.    At all relevant times mentioned herein, section 558 of the Labor Code provided:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:  (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  (3) Wages recovered pursuant to this section shall be paid to the affected employee.

97.    At all relevant times herein, California Labor Code section 2802 provided, in relevant part:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties (b) All awards made by a court . . . for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions.  Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss. (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing rights granted by this section.

Cal. Lab. Code § 2802.

103.    At all relevant times herein, California Labor Code section 221 provided:

25

It shall be unlawful for any employer to collect or receive from an employee any part of
wages theretofore paid by said employer to said employee.

Cal. Lab. Code § 221.  "[Labor Code] section 221 has long been held to prohibit deductions from an

employee's wages for cash shortages, breakage, loss of equipment, and other business losses that may

result from the employee's simple negligence." Hudgins v. Neiman Marcus Group, Inc., 34 Cal.App.4th

1109, 1118 (1995).  An employer can lawfully withhold amounts from an employee's wages only: (1)

when required or empowered to do so by state or federal law, or (2) when a deduction is expressly

authorized in writing by the employee to cover insurance premiums, benefit plan contributions or other

deductions not amounting to a rebate on the employee's wages, or (3) when a deduction to cover health,

welfare, or pension contributions is expressly authorized by a wage or collective bargaining

agreement. Labor Code Sections 221 and 224.

104.    Notwithstanding the foregoing requirements of law, Plaintiff and the Class Members were

often not timely paid the minimum wages and/or overtime to which they were entitled.  Plaintiff and the

Class Members were often denied reimbursement, meal breaks, rest breaks and payment of overtime

wages although they often worked in excess of eight hours per day and forty hours per week.

105. All of the foregoing was intentional misconduct of Defendants that injured Plaintiff and

putative Class Members insofar as they were subjected to confusion and deprived of information to

which they were legally entitled.

### CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to

Code of Civil Procedure section 382.  Plaintiff seeks to represent a Class which is defined as:  **all non-**

**exempt, non-union**[22] **SWA employees whose base of work was California during the period four**

**years prior to the filing of this Complaint (plus any applicable tolling period) and ending on such**

**date as may be determined by the Court (the "Class Members").**

107.    The Class includes all persons who performed work for SWA during the Class Period with

---

[22] According to its 2023 DEI Report, approximately 17% of SWA's 80,000 current employees are non-
union, a percentage which has remained steady for five years.
https://www.southwest.com/assets/pdfs/communications/one-reports/2023-DEI-Report_Online_Final.pdf

California as their base of work, even if they were paid by salary, piece rate, or any combination thereof.

108.    Plaintiff reserves the right under Rule 3.765 of the California Rules of Court to amend or modify the class descriptions with greater specificity or to further divide the class into subclasses.

109.    This action is properly brought as a class action pursuant to Code of Civil Procedure 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

110.    Numerosity: The potential members of the Class are so numerous that joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that SWA employed more than 90 employees who provided services during the Class Period.  Nevertheless, the Class does not consist of so many individuals as to make this case unmanageable.

111.    Commonality: There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Common questions include, but at not limited to: (a) whether SWA provided accurate itemized wage statements to its workers; (b) whether SWA failed to pay Class members proper minimum wage compensation; (c) whether SWA reimbursed class members for expenses; and (e) whether SWA made unlawful deductions, among others. Moreover, there are very few questions of law or fact that are not common to the class.

112.    Typicality: The claims of Plaintiff are typical of the claims of the Class.

113.    Adequacy of representation: Plaintiff will fairy and adequately represent and protect the interests of the members of the Class. Counsel for Plaintiff are competent and experienced in litigating employment class action cases.

114.    Superiority of Class Action: A class action is superior to other available means for the fair and efficient adjudication of this controversy. The unlawful conduct described in this complaint is based on SWA's company-wide policies regarding its treatment of employees. Moreover, class action treatment will allow people similarly situated as Plaintiff to litigate their claims in the manner that is most efficient and economical for all parties and for the judicial system.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**

(Failure To Pay Minimum Wage)

(By Plaintiff individually and on behalf of the Class against all Defendants)

115.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

116.    Under both state and federal law, employees may not agree to waive their entitlement to the minimum wage. Moreover, contrary to the federal averaging method, California workers must receive the minimum wage for each hour worked during the payroll period.

117.    Plaintiff is informed and believes, and thereon alleges, that many times, Plaintiff and members of the Class were not compensated in an amount greater than or equal to the applicable California minimum wage while employed by SWA.

118.    As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof at time of trial, a sum in excess of $500, plus interest and penalties.

**SECOND CAUSE OF ACTION**

(Failure To Provide Itemized Wage Statements Labor Code § 226)

(By Plaintiff individually and on behalf of the Class and against all Defendants)

119.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

120.    In many wage statements, Defendants knowingly and intentionally failed to comply with Labor Code section 226(a), which requires Defendants to provide the name of the legal entity which is the employer, itemize in wage statements all deductions from payment of wages, and accurately report total hours worked by Plaintiff and members of the Class, including premium wages owing on account of Defendants' failure to pay proper wages.

121.    Wage Order 9-2001 (7) requires Defendants to maintain time records showing, among other things, when the employee begins and ends each work period and total daily hours worked in an itemized wage statement. Time records must also show all deductions from payment of wages and accurately report

28

total hours worked by Plaintiff and members of the Class, as well as the name of the legal entity which is the employer.

122.    An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code section 226(a) is entitled to recover the greater of all actual damages of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000 dollars, a sum in excess of $500.

## THIRD CAUSE OF ACTION

(Waiting Time Penalties Labor Code § 203)

(By Plaintiff individually and on behalf of the Class and against all Defendants)

123.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

124.    Defendants' failure to pay wages, as alleged above, was willful in that SWA knew wages were due but failed to pay them. This entitles Plaintiff and members of the Class who are no longer working as employees to penalties under Labor Code § 203, which provides that an employee's wages shall continue as penalty until paid for a period of up to 30 days from the time they were due.

125.    Many times, Defendants failed to pay Plaintiff and relevant members of the Class all wages and vacation pay due at the time of termination or within 72 hours of their resignation. Pursuant to Labor Code section 203, Plaintiff and relevant members of the Class  are entitled to a penalty in the amount of their respective daily wage multiplied by 30 days, a sum in excess of $5,000.

## FOURTH CAUSE OF ACTION

(Failure To Provide Indemnification of Business Expenses Labor Code §2802)

(By Plaintiff individually and on behalf of the Class and against all Defendants)

126.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

127.    Labor Code section 2802 requires Defendants to reimburse Plaintiff and members of the Class  for the expenses incurred by them in the performance of their job duties, including but not limited to, expenses incurred by the use of their vehicles, insurance, rental fees, mileage, cell phone usage,

29

uniforms, equipment purchases, and telephone usage resulting from the performance of their job duties. Plaintiff and the Class Members were often required to stay at airports, unhoused, for up to 30 hours at a time without reimbursement essential items such as food and lodging.

128.    Defendants violated Labor Code section 2802 because they often required Plaintiff and members of the Class to incur and pay for such expenses in the discharge of their employment duties and without reimbursement.

129.    As a proximate result, Plaintiff and members of the Class  have been damaged in an amount according to proof at trial, a sum in excess of $100, plus interest and penalties.

## FIFTH CAUSE OF ACTION

(Improper Deductions From Wages, Labor Code § 221)

(By Plaintiff individually and on behalf of the Class and against all Defendants)

130.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

131.    Labor Code section 221 prohibits Defendants from deducting from employee wages paid toward employee compensation.

132.    Plaintiff is informed and believes, and on that basis alleges, that Defendants improperly deducted portions of Plaintiff's wages and the wages of members of the Class, in violation of Labor Code section 221.

133.    As a proximate result, Plaintiff and members of the Class have been damaged in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

(Unfair Competition Business and Professions Code Section 17200)

(By Plaintiff individually and on behalf of the Class and against all Defendants)

134.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

135.    The conduct of Defendants as alleged in this Complaint has been, and continues to be, unfair, unlawful, deceptive, and harmful to Plaintiff, the Class, and the public in general. Plaintiff seeks

30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to enforce important rights affecting the public interest within the meaning of code of Civil Procedure section 1021.5.

136.    Plaintiff is a "person" within the meaning of Business & Professions Code section 17204, and, therefore, has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

137.    Bus. & Professions Code § 17200 *et seq.* prohibits unlawful and unfair business practices.

138.    California's wage and hours laws, including the laws described in this Complaint, reflect public policies that are fundamental in the State of California and the United States, the FLSA reflecting a public policy that is fundamental throughout the United States. These public policies include the importance of providing employees with proper compensation, meal periods, and rest breaks, as well as reimbursement for reasonable expenses, such as maintaining cell phones.

139.    Through the conduct alleged in this Complaint, Defendants have acted contrary to these public policies, have violated the California Labor Code, and have engaged in other unlawful, unfair, and deceptive business practices in violation of California's Business & Professions Code. As a result, Plaintiff, and all persons similarly situated (including the Class Members alleged in this Complaint) have been deprived of rights, benefits, and privileges guaranteed to employees by law.

140.    Defendants, by engaging in the conduct described in this Complaint, either knew or should have known that its conduct was unlawful, especially conduct which violates Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, discrimination on the basis of race, color, and/or sex/gender .

141.    As a proximate result of Defendants' conduct, Plaintiff and Class Members alleged herein have been damaged in a sum to be proven at trial.

142.    This Court should therefore make such orders and/or judgments as may be necessary to require Defendants to pay to Plaintiff and the members of the Class the money Defendants have heretofore unlawfully failed to pay them, a sum in excess of $500, plus interest and penalties.

///

///

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEVENTH CAUSE OF ACTION**

(Cal. Lab. Code §§ 226 & 1198.5—Failure to Provide Employment Records Upon Request)

(On Behalf of Plaintiff Against Defendant SWA)

143.     Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in this Complaint.

144.     Pursuant to Labor Code section 226(b), an employer shall afford current and former employees the right to inspect or copy the records pertaining to that current or former employee, upon reasonable request to the employer.

145.     Plaintiff has requested that Defendant SWA permit inspection or copying of Plaintiff's employment records pursuant to Labor Code section 226(b).  SWA has failed to provide Plaintiff with all of her employment records within 21 days of her request.

146.     Pursuant to Labor Code section 1198.5 "has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." Cal. Lab. Code § 1198.5.

147.     Plaintiff requested that Defendant SWA permit inspection or copying of her employment records pursuant to Labor Code section 1198.5. Defendant SWA has failed to provide Plaintiff with an opportunity to inspect or copy all of her employment records within 30 days of her request.

148.     Pursuant to Labor Code section 1198.5(k) Plaintiff is entitled, and hereby seeks to recover from Defendant SWA a seven-hundred-fifty dollar ($750) penalty, reasonable attorney's fees, and the cost of bringing this cause of action.

149.     Pursuant to Labor Code section 226(f) and (g), Plaintiff is entitled, and hereby seeks to recover from Defendant SWA a seven-hundred-fifty dollar ($750) penalty, reasonable attorneys' fees, and the cost of bringing this cause of action.

**EIGHTH CAUSE OF ACTION**

(Retaliation for Opposing Discrimination and Harassment, Cal. Gov. Code § 12940(h))

(On Behalf of Plaintiff Against All Defendants)

150.     Plaintiff repleads, realleges, and incorporates by reference each and every allegation set

32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

forth in the Complaint.

151.    At all relevant times herein and in violation of California Government Code section 12940(h), each Doe Defendant harassed, discriminated and retaliated against Plaintiff by adversely affecting Plaintiff's employment after she complained about and/or opposed unlawful labor practices such as failure to pay commissions and wages in a timely manner and harassment.

152.    Plaintiff repeatedly opposed, rejected, did not welcome, and complained about harassment and discrimination.

153.    The conduct of Defendants and/or its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendant and its agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendant.

154.    Plaintiff filed a complaint with the CCRD.  Plaintiff has received the requisite right-to-sue letter issued by the CCRD regarding the claims involving harassment and discrimination herein. Therefore, Plaintiff filed this action within one year of the date of the "right to sue" letter received from the CCRD and therefore has properly exhausted her administrative remedies.

## NINTH CAUSE OF ACTION

(Hostile Work Environment, Cal. Gov. Code §§ 12940(j) and (k))

(By Plaintiff Glover-Griffin Against All Defendants)

155.    Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in the Complaint.

156.    Defendants were Plaintiff's employer for purposes of Government Code section 12940(j)(4)(A).

157.    Plaintiff was subjected to severe and pervasive harassment while working for Defendants, which caused the creation and maintenance of a hostile and abusive work environment.  Plaintiff was subjected to unwanted harassing conduct, derogatory comments as well as other harassing discriminatory conduct by Defendants, its employees and its managers.

33

158.    During the course of her employment with Defendant, Plaintiff—because of her gender, sexual orientation and race—was continuously discriminated against, harassed, and subjected to a hostile work environment by the actions, conduct, and comments of Defendants, its employee, and its manager. These actions constituted a continuing violation of Government Code section 12940 *et seq.*

159.    Reasonable persons in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

160.    The harassment was sufficiently pervasive so as to alter the conditions of employment, and it created an abusive and hostile working environment. Plaintiff considered the work environment to be hostile and abusive.

161.    The actions of Defendants, their employees, and their managers constituted unlawful discrimination in employment, based on harassment, in contravention of the FEHA, California Government Code section 12900 *et seq.*, and the corresponding regulations of the DFEH, which forbid discrimination in the workplace and adverse employment actions on account of gender, sex, and race. Plaintiff's supervisors were aware, approved, and even participated in, such offending conduct.

162.    Defendants knew or should have known of the harassment and discrimination and offensive conduct to take immediate and appropriate corrective action, but failed to properly investigate the harassment and discrimination, which caused and contributed to the existence of the hostile work environment as alleged herein. Further, Plaintiff alleges that Defendant had full knowledge of the hostile work environment, including by reason of the personal complaint that Plaintiff made to management, but nonetheless, Defendant failed to rectify—or even address—the behavior of the persons creating the hostile work environment.

163.    As a proximate result of the actions and failures to act by Defendant, Plaintiff suffered physical, emotional, and economic injury. As a further proximate, foreseeable and direct result of the discriminatory acts, Plaintiff continues to suffer physical harm, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damages in an amount according to proof.

164.    The actions of Defendants' employees were done with malice, fraud, and/or oppression, and in reckless disregard of Plaintiff's rights under California law.

34

165.    Defendant ratified the malicious, fraudulent, and/or oppressive conduct of its employees when it failed to prevent it.

166.    Defendants engaged in conduct constituting an unlawful employment practice in violation of California Government Code section 12940(a), which conduct was malicious, fraudulent, and/or oppressive.  Thus, Plaintiff is entitled to recover punitive damages from Defendant, in an amount according to proof.

167.    As a direct and proximate result of the conduct of Defendant in violation of the FEHA, *inter alia*, Plaintiff is entitled, pursuant to FEHA, to recover from Defendant and do pray for remedies allowed under the FEHA, including but not limited to, general and special damages, punitive damages, costs, interest, and attorneys' fees.

168.    Plaintiff filed a complaint with the CCRD.  Plaintiff has received the requisite right-to-sue letter issued by the DFEH regarding the claims involving harassment and discrimination herein.  Plaintiff filed this action within one year of the date of the "right to sue" letter received from the CCRD and therefore has properly exhausted her administrative remedies.

## **TENTH CAUSE OF ACTION**

(Failure to Take All Reasonable Steps to Prevent Discrimination in Violation

of Cal. Government Code § 12940, et seq.)

(By Plaintiff Glover-Griffin Against All Defendants)

169.    Plaintiff hereby incorporates into this Cause of Action by reference all prior paragraphs of this Complaint, as though fully set forth herein.

170.    At all times herein mentioned, California's Fair Employment and Housing Act, Government Code § 12940 et seq., was in full force and effect and fully binding upon Defendants. Defendants are "employers" within the meaning of the FEHA.

171.    At all times relevant herein, Plaintiff was an employee or applicant.

172.    At all times relevant herein, Plaintiff was member of a class of persons protected from discrimination in employment.

173.    Defendants, and each of them, had an affirmative duty to take all reasonable steps

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

necessary to prevent discrimination and harassment from occurring in the workplace pursuant to Government Code sections l2940(j)(1) and l2940(k).  California Government Code § 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring in the workplace.

174.    By Defendants' conduct, as alleged herein, and by failing to express strong disapproval of harassing and discriminatory practices, by failing to develop appropriate sanctions for harassment, by failing to develop appropriate methods to educate its employees and owners of the gravity of consequences for doing so, failed to conduct reasonable and impartial investigations when Plaintiff complained about discriminatory conduct on the part of Defendant, failed to take reasonable steps necessary to investigate the misconduct and prevent it from occurring and continuing and by failing to take immediate and appropriate corrective action to stop the harassment from occurring, Defendants, and each of them, breached the affirmative duty as set forth in California Government Code §12940(k) by various actions and failures and refusals to act as described herein. These acts included, but are not limited to failing to train, discipline, monitor, enforce and oversee anti-harassment training.

175.    Defendants' conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code § 12940.

176.    As a direct, foreseeable and proximate result of Defendants acts, Plaintiff has suffered and continue to suffer foreseeable damages and injury in amounts not ascertained but in excess of the jurisdictional minimum of this Court, including, but not limited to, losses in the conditions of employment other employment benefits, emotional and physical distress, depression, anxiety, humiliation, embarrassment, pain, discomfort and suffering and loss an injury to reputation.

177.    Defendants' failure to take reasonable steps to prevent discriminatory conduct was a substantial factor in causing Plaintiff's harm, which includes emotional distress and economic loss.  As a direct result thereof, Plaintiff has sustained damages (including incurring medical bills and lost income) with the precise amount to be established according to proof at trial.

178.    Defendants have committed the outrageous despicable acts, as herein alleged, maliciously, fraudulently, and oppressively, with the wrongful intent of injuring Plaintiff, and done with ill will and

36

intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress, and in conscious disregard of Plaintiff's rights.

179.    Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiff to punitive damages against these Defendants only.

## ELEVENTH CAUSE OF ACTION

(Breach of Contract)

(By Plaintiff Glover-Griffin individually and on behalf of the Class and against all Defendants)

180.    As part of the employment contracts between each Plaintiff and Class member, on the one hand, and Defendants, on the other, the Parties agreed that their contract had an implied covenant of good faith and fair dealing.

181.    In this matter there was no explicit written contract of employment between Plaintiffs and Class Members on the one hand, and Defendants on the other.

182.    "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am, Inc. 161 Cal. App. 4th 172, 182 (2008).

183.    The elements of a cause of action for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Coles v. Glaser, 2 Cal. App. 5th 384, 391 (2016).

184.    Every implied contract for employment within California incorporates by implication the requirements of the FLSA and the California Labor Code.

185.    The implied employment contracts between Plaintiffs and the Class Members, on the one hand, and Defendants on the other, include the matters to which reference is made herein and are evidenced by various documents concerning the Parties.  For example, with respect to Plaintiff, the terms of the implied employment contract which she had with Defendants included that she would not be terminated without cause or discriminated against.  However, here, Plaintiff was terminated based upon false allegations of misconduct.

37

186. Plaintiff and Class Members diligently worked for Defendants and fulfilled their obligations under their contracts of employment. Defendants breached their implied contracts of employment with Plaintiff and Class Members when they: (1) failed to provide Notice of the Plaintiffs' and Class Members' right to additional wages on account of the alleged failure to pay premium wages for rest breaks and/or meal periods, much less pay such wages; (2) failed to compensate Plaintiffs and Class Members for their use of personal cell phones and/or computer equipment; (3) failed to timely pay for all hours worked, never paying premium wages for rest breaks, routinely reusing illegal rounding and improperly conceived de minimus claims, deducting exactly thirty or exactly sixty minutes from faux days of work, often paying wages more than a week after the promised and legally required "next week" – instead paying many days late, often beyond even the extended times permitted by Section 204 of the Code in the event this Court determines that provision applies.

## TWELFTH CAUSE OF ACTION

(Retaliation and Wrongful Termination in Violation of Public Policy)

(On Behalf of Plaintiff Against All Defendants)

187. Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in the Complaint.

188. Jurisdiction is invoked in this Court pursuant to the public policy and common law of the State of California, pursuant to Tameny v. Atlantic Richfield Company, 27 Cal. 3d 167 (1980).

189. Under California law, there is a fundamental and well-established public policy against retaliation for opposing unlawful or unsafe activities, including, but not limited to, complaining about and filing complaints with governmental agencies for violations. This fundamental public policy is embodied in the California Constitution and California statutory law. Adverse employment actions taken by an employer in response to such activity are contrary to such public policy and are thus actionable under the common law of California.

190. This is a claim for relief arising out of retaliation by Defendant against Plaintiff for: (a) notifying Defendant that it was committing labor law violations and (b) resisting discriminatory activities by Defendants.

38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

191.    As set forth above, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.  In terminating Plaintiff for reporting wage/hour and safety violations, Defendant violated the fundamental public policies embodied in California Labor Code section 1102.5 and other provisions of law identified herein.

192.    In perpetrating the above-described conduct, Defendants engaged in a pattern and practice of unlawful harassment and discrimination in violation of California's public policy against discrimination and retaliation as embodied in the Fair Employment and Housing Act (Government Code section 12900 *et seq*.), the California Constitution, Article 1, Section 8, and other related laws. Defendant and/or its agents/employees discriminated against plaintiff and/or failed to take immediate and appropriate corrective action.

193.    The harassment was sufficiently pervasive and severe as to alter conditions of employment and to create a hostile or abusive work environment.

194.    The conduct of Defendants and/or its agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions.

195.    Defendant and its agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other. Consequently, each Plaintiff is entitled to punitive damages against Defendant.

196.    Defendant created intolerable, offensive work conditions.  Defendant's termination of Plaintiff in violation of the law constitutes wrongful discharge of Plaintiff in violation of public policy.  As a proximate result of this wrongful discharge, Plaintiff has suffered losses in earnings and job benefits, as well as humiliation, embarrassment, mental and emotional distress, and discomfort.  Plaintiff is entitled to damages in an amount according to proof.

197.    As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

198.    As a further proximate result of Defendant's wrongful conduct, Plaintiff has suffered, and

39

continues to suffer, humiliation, embarrassment, emotional distress and mental anguish, all in an amount to be determined according to proof at the time of trial.

199.    In doing the acts herein alleged, Defendant acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff, and Plaintiff is therefore entitled to punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

## THIRTEENTH CAUSE OF ACTION

Negligent Hiring, Training, Retention, Supervision and Discipline

(By Plaintiff Against All Defendants)

200.    Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in this Complaint.

201.    Defendants had a mandatory duty of care to properly hire, train, retain, supervise and discipline employees so as to avoid unreasonable harm to citizens and employees, including Plaintiff. With deliberate indifference, Defendants failed to take necessary, proper, or adequate measures in order to prevent the violation of Plaintiff's rights and injury to Plaintiff.

202.    Defendants owed a duty of care to Plaintiff to hire and train managers and employees who would refrain from harassing, harming, and discriminating against Plaintiff and other employees.

203.    Defendants breached its duties by failing to exercise reasonable care in hiring people who were interacting with Plaintiff.  Among other acts and/or failures to act, Defendants despite having actual or constructive knowledge that the Employees were harassing, harming, and discriminating against Plaintiff.

204.    Defendants breached a duty of care to law-abiding employees and failed to adequately train employees to treat employees in a manner that is not harassing, discriminatory and/or abusive. This lack of adequate supervisory training, and/or policies and procedures demonstrates a failure to make reasonable attempts and to prevent discriminatory and illegal behavior. In addition, the retention of Employees despite having actual or constructive knowledge that they were engaged in discriminatory and illegal behavior.

205.    Defendants directly and proximately caused emotional, physical and financial injuries to

Plaintiff in that they negligently, wantonly, recklessly, tortiously, and unlawfully hired managers and employees who harassed, assaulted, and abused Plaintiff during the course of their employment.

206.    Defendants breached that duty by retaining such employees and/or failing to discharge them after they had learned of their discriminatory and harassing practices.   Defendants proximately caused damages to Plaintiff in that they negligently, wantonly, recklessly, tortiously, and unlawfully retained and failed to discharge, reprimand, or take disciplinary action against their managers and employees after Defendants had obtained actual and/or constructive notice of the abuse and harassment of Plaintiff, as alleged in this Complaint.

207.    Defendants further owed a duty of care to Plaintiff to train and supervise their managers, employees and co-owners to prevent them from harassing employees.   Defendants had this duty especially after they had obtained actual and/or constructive knowledge of their employees' discriminatory, harassing and abusive practices against Plaintiff.

208.    Defendants breached that duty by failing to train and/or supervise their employees properly.

209.    As a proximate result of Defendants' negligent hiring and retention of employees who discriminated against and harassed Plaintiff and their failure to train and supervise their employees to prevent such violence, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

210.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees in a sum according to proof.  Defendants' misconduct was done intentionally, in a malicious, despicable, oppressive manner, entitling Plaintiff to punitive damages against Defendants.

## FOURTEENTH CAUSE OF ACTION

(Employment Discrimination)

(By Plaintiff against all Defendants)

199.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

200.    During the course of her employment with SWA, Defendant discriminated against

41

Plaintiff on the basis of race, color, sex, gender and sexual orientation.

201.    As stated previously, as a flight attendant in her probationary employment period, Plaintiff's conduct was held to an unachievably *high standard* compared to her white counterparts.  In fact, as detailed below, the standards to which Plaintiff was held, compared to her white counterparts, were so strict that they bordered on the absurd.

202.    As stated previously, Plaintiff had to endure an absurdly-high level of *scrutiny* compared to her white counterparts. Without cause, Plaintiff was subject to one or more Ghost Rides.

203.    According to the SWA uniform policy, an employee can wear a company-issued jacket in flight, if weather conditions permit.  Despite the bitterly cold temperatures, Plaintiff was cited by the supervisor for wearing her jacket, when other white flight attendants who wore their jackets in similar circumstances were not cited.

204.    In yet another example of the extreme scrutiny placed upon Plaintiff which white employees did not have to endure, Plaintiff was secretly observed by a supervisor during the Ghost Ride to have worn a skirt which was too short.

205.    During a disciplinary phone call, the supervisor who observed Plaintiff during the ghost ride stated that Plaintiff's skirt dress was allegedly two inches above the middle of Plaintiff's knee" while Plaintiff was "in motion".  Absurdly, the "dress policy" that Plaintiff allegedly violated was rolled out AFTER Plaintiff had already embarked on the three-day trip, such that she had no opportunity to change her wardrobe.

206.    At the same time, white employees were *not* singled out for wearing skirts shorter than the one worn by Plaintiff.

207.    Further, biological white male employees who identified as women have been allowed by SWA to wear dresses which were much shorter than the dress worn by Plaintiff, photos of which were frequently posed on social media websites.

208.    Plaintiff was singled out for extra scrutiny for extremely minor clothing issues that white or gay male employees (including biological males who identified as women) did not have to endure. Following a Ghost Ride, a supervisor determined that the shoes worn by Plaintiff during her training and

42

throughout her employment were suddenly deemed unacceptable.  On the same ghost ride, Plaintiff was falsely accused of wearing a "cross body purse" when in fact she was wearing a regulation identification holder, which is acceptable according to the uniform policy.  Plaintiff was also cited for having a small ear piercing at the top of her ear, even though she had the piercing from the time she was hired, trained and throughout her entire employment, and had never been notified that the piercing was against regulations.

209.    Other similarly-situated white flight attendants with alleged clothing violations were simply given warnings and multiple opportunities to correct the situation.  On the contrary, Plaintiff was not given the opportunity to correct her alleged clothing violations, but rather, she was abruptly terminated on or about March 22, 2023.

210.    As stated above, the entire pretext of secretly observing Plaintiff on the ghost rides was that she incurred an alleged "UTC" (Unable to Contact) occurrence when she "on reserve" on or about March 19, 2023.  (Being "on reserve" means that an employee must be ready to be called into work on an "as needed" basis.)

211.    However, a review of Plaintiff's call record obtained from T-Mobile—Plaintiff's  cell phone service—revealed that Plaintiff did not receive any calls at all during the time alleged.  See **Exhibit 3**.  Despite there being no actual record of Plaintiff receiving the phone calls alleged, Plaintiff was hit with a negative UTC "occurrence" on her record.

212.    Further, despite the late notice, Plaintiff still arrived at the airport, ready for her flight at 4:13 a.m., two minutes before the original check-in time of 4:15 a.m.

213.    Plaintiff presented evidence to SWA that (1) she did not receive the alleged phone calls; and (2) that she arrived at her post early, two minutes prior to the original check-in time.  See **Exhibit 3**.  Nonetheless, SWA refused to remove the negative occurrences from her records.   Further, they subjected her to one of more Ghost Rides in retaliation for her resisting the false UTC incident.

214.    Other similarly-situated white flight attendants in their probationary employment period like Plaintiff, were not terminated following similar UTC "occurrences", but instead were given warnings and multiple opportunities to comply.

215.    During the course of her employment with Defendant, Plaintiff—because of her race, color, sexual orientation and gender/sex—was continuously discriminated against, harassed, and subjected to a hostile work environment by the actions, conduct, and comments of Defendant, their employees and its managers.

216.    Reasonable persons in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

217.    The harassment was sufficiently pervasive so as to alter the conditions of employment, and it created an abusive and hostile working environment. Plaintiff considered the work environment to be hostile and abusive.

218.    The actions of Defendant, their employees, and their managers constituted unlawful discrimination in employment, based on harassment, in contravention of the law, which forbid discrimination in the workplace and adverse employment actions on account of gender/sex, race and color. Plaintiff's supervisors were aware, approved, and even participated in, such offending conduct.

219.    Defendants knew or should have known of the harassment and discrimination and offensive conduct to take immediate and appropriate corrective action, but failed to properly investigate the harassment and discrimination, which caused and contributed to the existence of the hostile work environment as alleged herein.

220.    Further, Plaintiff alleges that Defendant had full knowledge of the hostile work environment, including by reason of the personal complaint that Plaintiff made to management, but nonetheless, Defendant failed to rectify—or even address—the behavior of the persons creating the hostile work environment.

221.    As a proximate result of the actions and failures to act by Defendant, Plaintiff suffered physical, emotional, and economic injury. As a further proximate, foreseeable and direct result of the discriminatory acts, Plaintiff continues to suffer physical harm, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damages in an amount according to proof.

222.    The actions of Defendant's employee were done with malice, fraud, and/or oppression, and in reckless disregard of Plaintiff's rights under the law.

223.    Defendant ratified the malicious, fraudulent, and/or oppressive conduct of its employees when it failed to prevent it.

224.    Defendant engaged in conduct constituting an unlawful employment practice in violation of the law, which conduct was malicious, fraudulent, and/or oppressive.  Thus, Plaintiff is entitled to recover punitive damages from Defendant, in an amount according to proof.

225.    As a direct and proximate result of the conduct of Defendant in violation of the law, *inter alia*, Plaintiff is entitled, to recover from Defendant and does pray for remedies allowed under the law, including but not limited to, general and special damages, punitive damages, costs, interest, and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    For an Order that this action may proceed and be maintained as a class action, with an appropriate subclass or subclasses; that the named plaintiff be appointed class representative; and that plaintiff's counsel be named class counsel.

2.    That, under the First Cause of Action for unpaid overtime wages, this Court enter judgment in favor of award Plaintiff and other aggrieved former and current employees their wages, damages, liquidated damages, penalties, civil penalties, attorney's fees, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Labor Code.

3.    That, under the Second Cause of Action for failing to provide proper itemized wage statements, this Court enter judgment in favor of award Plaintiff and other aggrieved former and current employees their wages, damages, liquidated damages,  penalties, civil penalties, attorney's fees, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Labor Code.

4.    That, under the Third Cause of Action for failing to properly provide final wages upon termination of employment, this Court enter judgment in favor of Plaintiff and other aggrieved former and current employees and award them their wages, damages, liquidated damages, penalties, civil penalties, attorney's fees, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Labor Code.

45

5.      That, under the Fourth Cause of Action for failing to properly indemnify employees for their out of pocket expenses in violation of section 2802 of the California Labor Code, this Court enter judgment in favor of Plaintiff and other aggrieved former and current employees and award them their wages, damages, liquidated damages,  penalties, civil penalties, attorney's fees, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Labor Code.

6.      That, under the Fifth Cause of Action for taking improper deductions from wages, this Court enter judgment in favor of Plaintiff and other aggrieved former and current employees and award them their wages, damages, liquidated damages, penalties, civil penalties, attorney's fees, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Labor Code.

7.      That, under the Sixth Cause of Action for violation of the California Business and Professions Code, this Court enter judgment in favor of Plaintiff and other aggrieved former and current employees and award them their wages, damages, liquidated damages, attorney's fees, and costs of suit, all according to proof, pursuant to the relevant sections of the Business and Professions Code, deterring employment by Defendants or its agents and employees of any future unlawful, unfair, or deceptive practice.

8.      That, under the Seventh Causes of Action, this Court enter judgment in favor of Plaintiff and award them their wages, damages, liquidated damages, penalties, interest, attorney's fees, and costs of suit, all according to proof, pursuant to the relevant sections of the Labor Code, an amount no less than $1,500.

9.      That, under the Eighth Causes of Action, this Court enter judgment in favor of Plaintiff and award them their wages, damages, liquidated damages, penalties, interest, attorney's fees, and costs of suit, all according to proof, pursuant to the relevant sections of the Labor Code.

10.     That, under the Ninth Causes of Action, this Court enter judgment in favor of Plaintiff and award them their wages, damages, liquidated damages, penalties, interest, attorney's fees, and costs of suit, all according to proof, pursuant to the relevant sections of the Labor Code.

11.     That, under the Tenth Causes of Action, this Court enter judgment in favor of Plaintiff and award them their wages, damages, liquidated damages, penalties, interest, attorney's fees, and costs of

suit, all according to proof, pursuant to the relevant sections of the Labor Code.

12.     That, under the Eleventh Cause of Action, this Court enter judgment in favor of Plaintiff and the Class and award them their damages and costs of suit, all according to proof.

13.     That, under the Twelfth Cause of Action, this Court enter judgment in favor of Plaintiff and the Class and award them their damages and costs of suit, all according to proof.

14.     That, under the Thirteenth Cause of Action, this Court enter judgment in favor of Plaintiff and the Class and award them their damages and costs of suit, all according to proof.

15.     That, under the Fourteenth Cause of Action, this Court enter judgment in favor of Plaintiff and the Class and award them their damages and costs of suit, all according to proof.

16.     For statutory attorney's fees pursuant to Labor Code sections 218.5, 227(e), and 1194.

17.     For costs of suit.

18.     For prejudgment interest; and

19.     For such other and further relief as this Court may deem proper and just.

Plaintiff demands a trial by jury as to all counts.

DATED:  December 24, 2024                    HARRIS & RUBLE

*Alan Harris*

Alan Harris
David Garrett
*Attorney for Plaintiff*

47

**Index of Exhibits**

**Exhibit 1**:  State Right to Sue Letter

**Exhibit 2**:  Federal Right to Sue Letter

**Exhibit 3**:  Incident Report + Cell Phone Records

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Exhibit 1

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758                                  KEVIN KISH, DIRECTOR
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

EEOC Number:       480-2023-02993
Case Name:         Breanna Glover-griffin v Southwest Airlines
Filing Date:       March 31, 2023

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC directly for any discussion of this complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court.** According to Government Code section 12965, subdivision (c), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is filed.

# Exhibit 2

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/07/2024

To: Ms. Breanna Glover-Griffin
8555 Rose St. Unit D
BELLFLOWER, CA 90706
Charge No: 480-2023-02993

EEOC Representative and email:    JOSEPH SHIN
Joseph Shin
joseph.shin@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time *limit* for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
08/07/2024
Christine Park-Gonzalez
District Director

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2023-02993 to the

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
255 E. Temple Street, 4th Floor
Los Angeles, CA 90012

LOS ANGELES CA 900

3 OCT 2024 PM 11 L

$0.69 0
US POSTAGE
FIRST-CLASS
06250002520209
FROM 90012

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Ms. Breanna Glover-Griffin

CA 90706

90706-772176

# Exhibit 3

 SWALife Login Page    www14.swalife.com/ e=print...

Welcome, Breanna Glover Griffin | Home

[Print] [Close]



| **Incident Info** | | **Flight History** | |
|---|---|---|---|
| IR # | ████████ | Flight Number | NA |
| Submitted Date | Mar 23, 2023 10:04:17 AM | Scheduled Departure City | NA |
| Event Date | 03/19/23 | Scheduled Arrival City | NA |
| | | Diversion City | |
| | | Aircraft Type | |
| | | Aircraft Number | |

**Narrative**

March 19, I was number 1 for a 3 day. I randomly woke up to a UTC on my board, but no missed call. I called crew scheduling immediately and asked what was the issue. He said they got a "busy tone" when they tried to contact me. The phone I have on file is a cellphone, not a land line so I'm unsure how someone can get a busy tone. It would go straight to voicemail if anything.

When I called crew scheduling, I was told that they wouldn't put the trip back on my board until I got to the airport. I got to the airport before the originally check in time for the trip, which was 615 central time. I arrived at the airport at 613 central time.

I called, they removed the UTC and reduced it to an FTR. However, I feel like it's unfairly given. I never received a phone call. Attached to this email is screenshots of my phone log from the actually company, not my call log. Please have a look.

Timeline:
- 3/19 3:46a Woke up out of my sleep on March 19, UTC on my board
- 3/19 3:46a Checked to see if I had any missed calls, I don't have any missed calls
- 3/19 3:47a Called crew scheduling immediately to try and figure things out .. said they called me 1 time and got a beeping noise "busy" tone
- 3/19 4:13a Made it to the airport before the original check in time which was 415a LA time
- 3/19 4:13a Called crew scheduling to let them know I made it. Spoke to a supervisor in crew scheduling, advised me request a research request
- 3/19 4:13a Didn't cause a delay, got there and got right to work
- 3/19 7:43a Contacted T Mobile to get my call records, shows I never received a call from scheduling
- 3/19 7:10a Called the union to request a a research , advised they called 2 times, 7 seconds apart
- Emailed evidence to Molly 3/19 Second call lasted 21 seconds , beeping sound for 21 seconds
- 3/20 Reached out to onboarding supervisor via email for help, also sending in my T Mobile files
- 3/22 2:55p Molly called and she said she got the tapes , said it's no one's fault but kept FTR
- 3/22 Accepted it and said okay, thank you for still looking into it for me
- 3/22 called scheduling to add an additional phone number to try and cover my back next time

**Submitter Info**

| First Name | Last Name | Employee Number | Base | Position Flown |
|---|---|---|---|---|
| Breanna | Glover Griffin | e███████ | LAS | NA |

**Other Flight Attendants**

| Employee ID | First Name | Last Name | Base | Position Flown |
|---|---|---|---|---|
| List is empty. | | | | |

**Event Type**

| Event Type | Other |
|---|---|
| Other, please specify | IR Occurence |

**Select Equipment Involved**

| Equipment Involved (Please select) | NA, Other |
|---|---|
| Other, please specify | IR Occurrence |

**Event Information**

| Flight Phase at Time of Event | NA |
|---|---|
| *Select the flight phase in which the incident began* | |
| Was Fasten Seat Belt Sign On? | NA |
| Event Location | NA |

**Medical Assistance**

Welcome, Breanna Glover Griffin | Home

[ Print ]   [ Close ]

| **Incident Info** | | **Flight History** | |
|---|---|---|---|
| IR # | ▉▉▉ | Flight Number | NA |
| Submitted Date | Mar 23, 2023 10:11:33 AM | Scheduled Departure City | NA |
| Event Date | 03/21/23 | Scheduled Arrival City | NA |
| | | Diversion City | |
| | | Aircraft Type | |
| | | Aircraft Number | |

**Narrative**

3/22 3:51p received a phone call from jazmin proletariat, said she was on my flight yesterday

- 3/22 called me and said I did such a great job but wanted to critique the ride , give me a few pointers.
- 3/22 4:08p Critiqued : observed that dress was more than two inches above the middle of knee while in motion, had an ear piercing on the top part of ear, you wore a silver cross-body bag during your OWWE briefing, wearing loafers with your uniform dress, and you wore your scarf and coat throughout the flight.
- 3/22 advised at the end of the conversation that she is writing me up

- the dress given to me was from training, never altered. As well as the shoes. Loafers with a heel on it.
- I also have photos of me in the dress to show length and photos of shoes to show the shoes.

- 3/22 3:48p Later got a phone call from Heidi advising I have a fact finding as that's considered a 3rd occurrence

**Submitter Info**

| First Name | Last Name | → Employee Number | Base | Position Flown |
|---|---|---|---|---|
| Breanna | Glover Griffin | e▉▉▉ | LAS | NA |

**Other Flight Attendants**

| Employee ID | First Name | Last Name | Base | Position Flown |
|---|---|---|---|---|
| List is empty. | | | | |

**Event Type**

| Event Type | Other |
|---|---|
| Other, please specify | IR occurrences |

**Select Equipment Involved**

| Equipment Involved (Please select) | Other |
|---|---|
| Other, please specify | IR occurrences |

**Event Information**

| Flight Phase at Time of Event | NA |
|---|---|
| *Select the flight phase in which the incident began* | |
| Was Fasten Seat Belt Sign On? | NA |
| Event Location | NA |

**Medical Assistance**

Medical Assistance (Please select)

**Witnesses of Event**

| First Name | Last Name | Addr. 1 | Addr. 2 / Email | City | State | Zip | Phone Area | Exch. | Line | Ext |
|---|---|---|---|---|---|---|---|---|---|---|
| List is empty. | | | | | | | | | | |

**Passengers Directly Involved**

| First Name | Last Name | Addr. 1 | Addr. 2 / Email | City | State | Zip | State | Drivers License | Birth Date | Phone Area | Exch. | Line | Ext |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| List is empty. | | | | | | | | | | | | | |

**Medical Personnel Involved**

7:43    5Gᵉ

## Current cycle (21 days left) ▾

**Data**    **Messages**    **Calls**

Total calls:
# 958 minutes

🔍 Search phone number

Showing 86 records
Download all records

**Date** (PT) ⌄    **Number** ⌄

3/19/23
07:10 AM

(214) 640-▮▮▮▮▮
DALLAS, TX
5 Min

3/19/23
07:08 AM

(214) 640-▮▮▮▮▮
DALLAS, TX
1 Min

AA    🔒 t-mobile.com    ↻

7:43    5G



| 3/19/23<br>07:08 AM | **(214) 640-**<br>DALLAS, TX<br>1 Min |
|---|---|
| 3/19/23<br>06:59 AM | **(314) 814-**<br>ST LOUIS, MO<br>9 Min \| T-Mobile to T-Mobile |
| 3/19/23<br>04:13 AM | **(800) 447-**<br>1-800 #<br>10 Min \| Conference call |
| 3/19/23<br>03:56 AM | **(310) 877-**<br>SNMN SNMN, CA<br>43 Min \| T-Mobile to T-Mobile |
| 3/19/23<br>03:47 AM | **(800) 447-**<br>1-800 #<br>10 Min |
| 3/18/23<br>09:59 PM | **(310) 988-**<br>INCOMING<br>11 Min \| T-Mobile to T-Mobile |

‹  **1**  2  3  4  5  ...  13  ›

## Connect with T-Mobile

🔒 t-mobile.com — Private